471 A.2d 875

**FIRST SENECA BANK & TRUST COMPANY, Successor by Merger to Keystone Bank**

v.

**LAUREL MOUNTAIN DEVELOPMENT CORPORATION, a/k/a Laurel Mtn. Development Corp., Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 14, 1983.

Filed Feb. 10, 1984.

Petition for Allowance of Appeal Granted May 1, 1984.

James R. Cooney, Pittsburgh, for appellant.

Thomas E. Reilly, Pittsburgh, for appellee.

Before CAVANAUGH, McEWEN and BECK, JJ.

McEWEN, Judge:

Appellant, Laurel Mountain Development Corporation [hereinafter referred to as Laurel Mountain], seeks review of an order dismissing its petition to open the judgment confessed against it by the Keystone Bank, of which appellee First Seneca Bank & Trust Company [hereinafter referred to as First Seneca] is the successor in interest. The distinguished Judge Norman A. Shaulis dismissed the petition finding that the appellant did not promptly seek the requested relief. We affirm.

It is not necessary or purposeful to recount the detailed history of this appeal since a synopsis will enable a meaningful study. Appellant Laurel Mountain was the owner and developer of a tract of land in Somerset County, Pennsylvania. On August 25, 1975, Laurel Mountain obtained a mortgage loan from the Keystone Bank in the amount of $600,000.00 to be secured by this tract of ground. The agreement provided that $225,000.00 was to be disbursed immediately and the remaining $375,000.00 would be forthcoming after participation by other lenders in the venture was obtained. The parties executed a mortgage note, containing a confession of judgment clause, as evidence of the transaction. Laurel Mountain actually received $244,000.00 of the loan. The appellant fell behind in its payment schedule but the parties were able to resolve this initial default satisfactorily. In March of 1979, however, three and one-half years after the loan agreement, Laurel Mountain was again in default and Keystone proceeded to con-

fess judgment against it. The docket entries reflect that notice of the entry of this judgment was duly mailed to the appellant and the testimony of the president of Laurel Mountain, given at his deposition, indicates that the notice was received.

Laurel Mountain asserts that it was the failure of Keystone Bank to disburse the balance of the loan monies which was responsible for the financial difficulties which eventually resulted in this default. Representatives of the appellant contend that they contacted Keystone personnel many times after the initial disbursement seeking distribution of the remaining funds and were assured by Keystone that the monies would be forthcoming and, therefore, litigation to compel distribution was unwarranted. The attorney who confessed judgment against Laurel Mountain also represented Alan Patterson, the President and principal shareholder of Laurel Mountain and allegedly advised Patterson not to be concerned about the entry of judgment and that he [the attorney] would continue to protect the interests of Laurel Mountain.

When Keystone subsequently sought to execute upon the real property of appellant in March of 1980, Laurel Mountain, which had by this time secured different counsel, petitioned the Court of Common Pleas for a stay of the execution and received a stay of 120 days. When this stay had expired and the appellant remained in default, Keystone again ordered that execution issue. After Laurel Mountain petitioned for another stay, the court, persuaded by the representation of appellant that it would undertake an aggressive real estate campaign to sell the individual lots and obtain money with which to pay off its creditors, granted, on October 15, 1980, a further stay until March 31, 1981.

Prior to the expiration of this stay, appellant instituted, on February 11, 1981, a separate action in equity against the bank seeking to compel a disbursement of the remaining funds provided for in the agreement and to enjoin execution upon the confessed judgment. When, on March

31, 1981, the further stay of execution had expired appellee, First Seneca, which had merged with Keystone in August of 1980, sought to proceed with the execution. Appellant four months later, on July 30, 1981, in response to the threatened execution, filed (1) a petition to open or in the alternative to strike the judgment which had been entered 28 months earlier, (2) a motion for a stay of execution and (3) a motion to consolidate this action with the equity suit it had previously instituted. After depositions were taken and argument conducted, the petition to open judgment was dismissed on February 8, 1982.[1]

 The principles governing our review of this appeal are well established. A petition to open judgment is addressed to the sound discretion and equitable power of the hearing court. *Lincoln Bank v. Kelly*, 282 Pa.Super. 261, 266, 422 A.2d 1106, 1109 (1980). The exercise of this discretion will not be reversed in the absence of a manifest abuse of discretion or an error of law. *Id.* A judgment taken by confession can be opened only when the proponent acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to a jury. *Lazzarotti v. Juliano*, 322 Pa.Super. 129, 469 A.2d 216 (1983); *Young v. Pileggi*, 309 Pa.Super. 565, 568, 455 A.2d 1228, 1229–30 (1983). The facts of this case require us to focus upon and carefully analyze the particular requirement that the proponent act in timely fashion.

 Our review of Pennsylvania appellate discussions upon the subject convinces us that a mere consideration of the calendar provides an insufficient basis from which to determine whether the petitioner has complied with the requirement that the effort to open be commenced promptly. *See First National Bank of Verona v. Walsh*, 349 Pa.

1. The order of the hearing judge also dismissed the motion of appellant to strike the judgment, denied the motion to consolidate and lifted the stay of execution which had been ordered at the time of the filing of these motions. Appellant does not question the propriety of these provisions of the order.

241, 37 A.2d 130 (1944); *Wilkes-Barre Deposit & Savings Bank v. Hermann,* 334 Pa. 560, 6 A.2d 496 (1939). *See also Raymond J. Brusco Funeral Home v. Sicilia,* 277 Pa.Super. 115, 419 A.2d 688 (1980).

■ Rather, consideration of the timeliness requirement requires the Chancellor to weigh three factors, namely, the extent of the delay, the explanation for the delay and the nature of the harm resulting from the delay.

■ The emphasis frequently laid during appellate discussion of this issue upon the factors of the length and reasonableness of the delay has, perhaps, obscured the consideration provided the factor of prejudice resulting from the delay. Few principles are more clearly established in this Commonwealth than that a judgment debtor seeking to open a confessed judgment must act promptly, must allege a meritorious defense and must present such evidence of the defense as to indicate the issues are a question for the jury. We do not here suggest there is any further requirement—indeed, the nature of the prejudice claimed to have resulted from the delay is ordinarily evidence to be submitted by the respondent to a petition to open. Rather, we simply reiterate that a petition to open judgment is equitable in nature and, as such, is subject to the principle of laches which requires not only a finding of unexplained delay by the petitioner but also a finding that the judgment creditor has suffered prejudice by reason of the delay. *Lincoln Bank v. C & H Agency, Inc.,* 500 Pa. 294, 456 A.2d 136 (1982); *First Valley Bank v. Donatelli,* 279 Pa.Super. 521, 421 A.2d 321 (1980); *James v. Silverstein,* 224 Pa.Super. 489, 306 A.2d 910 (1973).

■ The able opinion of the hearing judge demonstrates the careful reflection he provided to each of the three elements that compose the requirement of timeliness. The failure of Laurel Mountain to challenge the confessed judgment until 28 months had elapsed hardly reflects the required diligence; and, of course, the explanation for that

delay can hardly be termed reasonable;[2] nor can it be doubted that the bank was prejudiced since it had been lulled for more than two years into believing that appellant did not intend to defend or question the debt but rather that the appellant sought several delays in execution solely for the purpose of enabling repayment of the obligation. Our study of the record leads us to conclude that the hearing judge properly determined that appellant had not proceeded in prompt fashion to challenge the judgment.

The hearing judge pronounced in clear and certain fashion his determination that appellant had not proceeded in a timely fashion, and apparently found it thereby unnecessary to consider the remaining requirements, namely, whether there was a meritorious defense and whether there appeared to be such evidence of the defense that the issue was a question for the jury. Nonetheless, we parenthetically observe that our examination of the entire record does not reveal that appellant had complied—or even was able to comply—with these obligations. Whatever relief or redress to which appellant might feel entitled by reason of the conduct of the representatives of the appellee would not

---

**2.** Whether there existed any merit to the claim of petitioner that it was lulled into inactivity by the representations of the attorney who was counsel for both the bank and Laurel Mountain, we note that this conflict of representation had ended by March of 1980, by which time Laurel Mountain had retained separate counsel. Appellant did not seek to open judgment until approximately sixteen months after this conflict had been resolved although it twice petitioned for a stay of the execution ordered by the bank. Moreover, Laurel Mountain advanced the following explanation for its failure to pursue this remedy in timely fashion:

> ..., the Defendant [Laurel Mountain] acted on the basis that the Defendant would be able to raise sufficient funds to pay off the claim of Keystone Bank and subsequently sue Keystone Bank when Defendant had sufficient funds—the Defendant being most interested in releasing the property of Laurel Mountain Development Corporation so that it could engage in the sale and development of lots and the construction of homes in the area *rather than to involve themselves [sic] in so much litigation as to be unable to carry on its daily business.*

Motion to Open Judgment, paragraph 6 (emphasis added). The mere desire of Laurel Mountain to avoid litigation, in the circumstances of this case, does not present a legally cognizable excuse for its protracted delay.

have been the basis for any defense to the obligation of repayment.

Order affirmed.